FILED IN DISTRICT COURT
OKLAHOMA COUNTY

OCT 18 2019

RICK WARREN
COURT CLERK

34



**IN THE DISTRICT COURT FOR THE STATE OF OKLAHOMA**
**OKLAHOMA COUNTY**

| | | |
|---|---|---|
| **(1) KIMBERLY BETCHAN and** | ) | |
| **(2) MICHELLE BOYD,** | ) | |
| | ) | |
| **PLAINTIFFS** | ) | **CASE NO. CJ-2019-2726** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **(1) STATE OF OKLAHOMA** *ex rel.* | ) | **ATTORNEY'S LIEN CLAIMED** |
| **BOARD OF REGENTS OF THE** | ) | |
| **UNIVERSITY OF OKLAHOMA,** | ) | |
| **DEFENDANT** | ) | |

## PLAINTIFFS' FIRST AMENDED PETITION

COME NOW the Plaintiffs, Kimberly Betchan and Michelle Boyd, and their claims against Defendant State of Oklahoma *ex rel.* Board of Regents of the University of Oklahoma. Plaintiffs hereby allege and state as follows:

1.  Plaintiff Kimberly Betchan ("Betchan") is a resident of Logan County and a citizen of the State of Oklahoma.

2.  Plaintiff Michelle Boyd ("Boyd") is a resident of Oklahoma County and a citizen of the State of Oklahoma.

3.  The Defendant Board of Regents ("Board") of the University of Oklahoma ("OU") is an agency of the State of Oklahoma.

4.  The OU Health Sciences Center is an agency and an integral part of OU.

5.  OU Physicians Fountain Lake Clinic ("Fountain Lake") in Edmond, OK, is a division of the OU Health Sciences Center.

6.  During all times relevant to this action, Plaintiffs were employees at Fountain Lake.

7.  Under 51 O.S. § 163(A), venue is proper in Oklahoma County.

1

## ADMINISTRATIVE REQUIREMENTS PRIOR TO FILING

8.   Plaintiff Betchan served a tort claim on the Board via hand delivery on January 25, 2019. The tort claim was denied on May 12, 2019.

9.   Plaintiff Betchan filed a claim with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2018. Her charge was issued on February 18, 2019, and her Dismissal and Notice of Rights letter was issued on February 19, 2019.

10.  Plaintiff Boyd served a tort claim on the Board via hand delivery on January 25, 2019. The tort claim was denied on May 12, 2019.

11.  Plaintiff Boyd filed a claim with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2018. Her charge was issued on August 21, 2019, and her Dismissal and Notice of Rights letter was issued on August 21, 2019.

## STATEMENT OF FACTS

12.  This is a claim for damages resulting from the breakdown in the employment relationships between Plaintiffs Betchan and Boyd and Fountain Lake.

## FACTS SPECIFIC TO KIMBERLY BETCHAN

13.  Plaintiffs incorporate all previous paragraphs as if set forth herein.

14.  At all times relevant to this action, Plaintiff Betchan was over the age of 40.

15.  Defendant Board employs more than 20 employees.

16.  Betchan was employed with Fountain Lake from February 16, 2015 until January 25, 2018.

17.  Betchan was a Patient Services Representative ("PSR") Team Lead at termination.

18.  In approximately June 2017, Shannon McEntire ("McEntire") became the Clinic Manager and Betchan's supervisor.

19.  On information and belief, McEntire was approximately 33 years old.

2

20.  McEntire called meetings, then intentionally failed to notify Betchan and failed to advise her of the information discussed.

21.  McEntire believed that, as a PSR Team Lead, Betchan should support changes that McEntire was implementing within the clinic.

22.  McEntire chastised Betchan when Betchan did not support the changes.

23.  Betchan had not received any written reprimands prior to McEntire's arrival.

24.  On or about July 5, 2017, Betchan received a verbal warning from McEntire for performance and lack of attention to detail.

25.  On or about August 25, 2017, Betchan received a written warning from McEntire for lack of attention to detail and poor follow up.

26.  In October 2017, McEntire accused Betchan of "boobytrapping" the office safe so that McEntire could not get into it.

27.  On more than one occasion, Betchan made it clear to McEntire that Betchan felt as if she was being singled out.

28.  Betchan also discussed with McEntire the staff's perceptions and concerns regarding McEntire's lack of communication and the policy changes McEntire was implementing in the clinic.

29.  McEntire dismissed Betchan's concerns.

30.  On or about October 1, 2017, Betchan filed a grievance against McEntire.

31.  Plaintiff Boyd was listed as a witness in Betchan's grievance.

32.  McEntire began a course of retaliation against Betchan.

33.  On or about November 7, 2017 Betchan received a final written warning from McEntire for lack of attention to detail.

34. Among other things, the final written warning alleged that Betchan had ordered the incorrect batteries for the office.

35. However, Betchan had ordered the correct batteries, but the office supply store delivered the wrong ones.

36. In December 2017, Betchan was left as the only manager in the office while McEntire and the other team lead were on vacation.

37. Betchan received praise in a staff meeting for how well she had done in the absence of the other managers.

38. McEntire was not pleased with the praise awarded to Betchan.

## FACTS SPECIFIC TO MICHELLE BOYD

39. Plaintiffs incorporate all previous paragraphs as if set forth herein.

40. At all times relevant to this action, Plaintiff Boyd was over the age of 40.

41. Boyd was employed with Fountain Lake from November 2014 until January 25, 2018.

42. Boyd was a Triage Nurse at termination.

43. McEntire was Boyd's supervisor.

44. On September 19, 2017 Boyd suffered a needle stick with a dirty needle.

45. Boyd required treatment to ensure she had not been exposed pathogens.

46. Boyd's injury constitutes a disability in that it temporarily affected her immune system.

47. Boyd's disability required reasonable accommodations.

48. Specifically, Boyd was required to have her blood drawn and tested multiple times to verify that she had not been contaminated by blood borne pathogens as a result of the needle stick.

49. Boyd's blood testing was required to occur one day, one month, two months, six months, and one year after the initial needle stick.

4

50.  Boyd request time off work for her testing appointments.

51.  Her requests were denied on at least three (3) separate occasions during the last four (4) months of her employment.

52.  Boyd was retaliated against for requesting reasonable accommodations for her disability.

53.  On October 2, 2017, Boyd filed a grievance against McEntire.

54.  Boyd's grievance was not resolved.

55.  Boyd was also listed as a witness in Betchan's grievance filed on or about October 1, 2017.

## FACTS COMMON TO BOTH PLAINTIFFS BETCHAN AND BOYD

56.  Plaintiffs incorporate all previous paragraphs as if set forth herein.

57.  Betchan had previously been a patient of Fountain Lake.

58.  On or around December 15, 2017, Betchan approached Dr. Tarun Desari ("Desari") in the hallway of the clinic to ask if he could write a note for Betchan's other employer regarding a particular medical issue.

59.  Desari directed Betchan to have one of the nurses check Betchan's medical records to see if she had a diagnosis code for the particular medical issue.

60.  Betchan approached Boyd to check Betchan's medical records for the diagnosis code as Desari had directed.

61.  Boyd asked Betchan for her date of birth, then accessed Betchan's medical records.

62.  Fountain Lake follows the minimum necessary rule which allows a healthcare provider to access a patient's medical records only to obtain the minimum necessary information needed in order to treat a patient.

63.  In accordance with the minimum necessary rule, Boyd viewed only the first page, noted the diagnosis code was not there, then exited the medical record.

5

64. On or around January 24, 2018, Rebecca Halley ("Halley"), Senior Human Resources Manager, was notified that Betchan's medical record had been accessed.

65. Halley asserted that the access of Betchan's medical record was a potential violation of Fountain Lake's Health Information Portability and Accountability Act ("HIPAA") policy.

66. Halley investigated and discovered that Boyd had accessed Betchan's medical record.

67. On information and belief, Halley believed that Betchan had instructed Boyd to add a diagnosis code to Betchan's medical record.

68. On information and belief, Halley believed Betchan's and Boyd's actions violated Fountain Lake's HIPAA policy and the minimum necessary rule.

69. Thereafter, on January 25, 2018, Betchan and Boyd were terminated for allegedly violating Fountain Lake's policies.

## CLAIM ONE – ADEA VIOLATION AS TO BOTH PLAINTIFFS

70. Plaintiffs incorporate all previous paragraphs as if set forth herein.

71. The Age Discrimination in Employment Act ("ADEA") prohibits employers from discriminating against employees on the basis of age.

72. Defendant Board employs more than 20 employees, which subjects it to the requirements under the ADEA.

73. At the time of the actions complained of herein, Plaintiffs were members of the class of people meant to be protected by the ADEA.

74. At the time of the actions complained of herein, Plaintiffs were supervised by McEntire, who on information and belief, was approximately 33 years old.

75. Plaintiffs were the victim of unwelcome behavior in that McEntire treated them and other employees over the age of 40 less favorably than employees who were younger.

6

76.  McEntire's actions were motivated by Plaintiffs' age.

77.  Shortly after she started, McEntire began harassing employees that were older than her, including Plaintiffs.

78.  Of approximately seven (7) employees over 40 years old that were harassed by McEntire, one transferred to another clinic, one quit, and three were discharged.

79.  McEntire had someone in Human Resources create a special job description for McEntire's friend so the friend could be hired. Her friend was 24 years old at the time.

80.  The friend failed to complete her job duties on a consistent basis, but she was not reprimanded.

81.  When Betchan failed to complete even one of her duties, she would be chastised.

82.  Betchan began receiving reprimands after McEntire's arrival.

83.  Betchan told McEntire that she felt singled out and filed a grievance against her.

84.  McEntire's attacks on Betchan intensified after the grievance was filed.

85.  McEntire's harassment of Betchan and Boyd was so severe and pervasive that it altered the terms and conditions of employment.

86.  Because the harassment was inflicted by McEntire in the course of her employment, the harassment is attributable to the Defendant.

87.  Defendant knew or should have known about McEntire's conduct because Betchan and Boyd filed grievances as a direct result of McEntire's conduct.

88.  But for Betchan's and Boyd's age, the harassment would not have occurred.

89.  As a result of Defendant Board's conduct, Plaintiffs were forced to endure a hostile work environment, were not promoted or given raises, were overlooked for promotions for which

they were otherwise qualified, have lost wages and benefits, and sustained damage to their reputations and careers.

90. Plaintiffs have suffered, and continue to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of their peace of mind as a result of Defendant Board's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

91. Plaintiffs Betchan and Boyd each have been injured in an amount in excess of $75,000 and are entitled to judgement against the Defendant Board for its wrongful conduct.

## CLAIM TWO – ADA DISCRIMINATION AS TO BOYD

92. Plaintiffs incorporate all previous paragraphs as if set forth herein.

93. Plaintiff Boyd was a qualified individual with a disability.

94. Boyd could perform the essential functions of her job with reasonable accommodation.

95. Specifically, Boyd required time off work to attend follow up appointments for her disability.

96. McEntire interfered with Boyd's request for reasonable accommodation by refusing to allow Boyd the time off work to attend her appointments.

97. McEntire's behavior became egregious enough that Boyd filed a grievance against McEntire.

98. McEntire's harassment of Boyd was so severe and pervasive that it altered the terms and conditions of employment.

99. Because the harassment was inflicted by McEntire in the course of her employment, the harassment is attributable to the Defendant.

100. Defendant knew or should have known about McEntire's conduct because Boyd filed a grievance as a direct result of McEntire's conduct.

101. As a result of Defendant Board's conduct, Plaintiff Boyd was forced to endure a hostile work environment, was not promoted or given a raise, was overlooked for promotions for which she was otherwise qualified, has lost wages and benefits, and sustained damage to her reputation and career.

102. Plaintiff Boyd has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of her peace of mind as a result of Defendant Board's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

103. Plaintiff Boyd has been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendant Board for its wrongful conduct.

## CLAIM THREE – OADA VIOLATION AS TO BOTH PLAINTIFFS

104. Plaintiffs incorporate all previous paragraphs as if set forth herein.

105. The incidents describe above that violate the ADEA and ADA also violate the Oklahoma Anti-Discrimination Act ("OADA").

106. As a result of Defendant Board's conduct, Plaintiffs were forced to endure a hostile work environment, were not promoted or given raises, were overlooked for promotions for which they were otherwise qualified, have lost wages and benefits, and sustained damage to their reputations and careers.

107. Plaintiffs have suffered, and continue to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of their peace of mind as a result of Defendant Board's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

108. Plaintiffs Betchan and Boyd each have been injured in an amount in excess of $75,000 and are entitled to judgement against the Defendant Board for its wrongful conduct.

## CLAIM FOUR – RETALIATION AS TO BOTH BETCHAN AND BOYD

109. Plaintiffs incorporate all previous paragraphs as if set forth herein.

110. Betchan and Boyd engaged in protected activity in that they filed grievances against their supervisor, McEntire.

111. As a result of their filing the grievances, Betchan and Boyd were subject to retaliatory actions by McEntire. Specifically, McEntire conducted an audit of Betchan's medical records.

112. As a result of the audit, Betchan and Boyd were accused committing a HIPAA violation and terminated.

113. As a result of Defendant Board's conduct, Plaintiffs were forced to endure a hostile work environment, were not promoted or given raises, were overlooked for promotions for which they were otherwise qualified, have lost wages and benefits, and sustained damage to their reputations and careers.

114. Plaintiffs have suffered, and continue to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of their peace of mind as a result of Defendant Board's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

115. Plaintiffs Betchan and Boyd each have been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendant Board for its wrongful conduct.

## CLAIM FOUR – BURK TORT AS TO BOTH PLAINTIFFS

116. Plaintiffs incorporate all previous paragraphs as if set forth herein.

117. Oklahoma has a clear and articulated public policy that allows patients to access information in their own medical records.

118. Specifically, 76 O.S. § 19(A)(1) states "Any person who is or has been a patient of a doctor, hospital, or other medical institution shall be entitled, upon request, to obtain information contained in the patient's medical records..."

119. Betchan had previously been a patient of Fountain Lake and requested information from her own patient medical records.

120. Betchan was, by law, allowed to have the information that she requested.

121. Betchan requested that a Fountain Lake employee, namely Boyd, provide to her the information from her medical record that she was entitled to have.

122. Boyd followed Defendant's protocol for accessing Betchan's medical records.

123. Defendant alleged that Betchan's and Boyd's actions constituted a HIPPA violation, and terminated their employment.

124. Defendant's actions violate Oklahoma's clear and articulated public policy.

125. As a result of Defendant Board's conduct, Plaintiffs were forced to endure a hostile work environment, were not promoted or given raises, were overlooked for promotions for which they were otherwise qualified, have lost wages and benefits, and sustained damage to their reputations and careers.

126. Plaintiffs have suffered, and continue to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of their peace of mind as a result of Defendant Board's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

127. Plaintiffs Betchan and Boyd each have been injured in an amount in excess of $75,000 and are entitled to judgement against the Defendant Board for its wrongful conduct.

WHEREFORE, Plaintiffs Kimberly Betchan and Michelle Boyd each demand judgement in their favor against the Defendant Board of Regents of the University of Oklahoma, an agency of the State of Oklahoma in an amount in excess of $75,000 for its wrongful, improper, and illegal conduct. Plaintiffs Betchan and Boyd each request that they be awarded their lost wages, damages for harm to their reputations and careers, mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of their peace of mind, and punitive damages. Plaintiffs Betchan and Boyd further request that the Court award each of them the costs and attorney's fees associated with this suit, and any and all other relief that the Court deems just and equitable.

Respectfully submitted,

Rachel Bussett, OBA#19769
Patricia A. Podolec, OBA #21325
Bussett Legal Group, PLLC
2201 N. Classen Blvd.
Oklahoma City, OK 73106
Telephone: (405) 605-8073
FAX:  (405) 212-9112
Email: Rachel@BussettLegal.com
        PPodolec@Bussettlegal.com

*ATTORNEY'S LIEN CLAIMED*
*JURY TRIAL DEMANDED*