UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIMBERLY BETCHAN et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No. CIV-20-128-G ) |
| STATE OF OKLAHOMA ex rel. BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA et al., | ) ) ) ) ) |
| Defendants. | ) |

# ORDER

Now before the Court are three motions to dismiss filed through counsel by Defendant State of Oklahoma *ex rel.* Board of Regents of the University of Oklahoma ("University") (Doc. No. 5), Defendant Shannon McEntire (Doc No. 6), and Defendant Rebecca Halley (Doc. No. 7). Plaintiffs Kimberly Betchan and Michelle Boyd have responded in opposition (Doc. Nos. 15, 16, 22), and Defendants have replied (Doc. Nos. 18, 19, 23). Having reviewed the parties' submissions and the operative pleading, the Court makes its determination.

## BACKGROUND

Plaintiffs' claims arise from their employment with OU Physicians Fountain Lake Clinic ("Fountain Lake"), a division of the OU Health Sciences Center. *See* Second Am. Pet. (Doc. No. 1-6) ¶¶ 4-6, 27, 52. Plaintiffs allege that the Board of Regents of the University of Oklahoma ("OU") is an arm of the State of Oklahoma and that the OU Health Sciences Center "is an agency and an integral part of OU." *Id.* ¶ 5.

At the times relevant to this litigation, Plaintiff Kimberly Betchan served as a Patient Services Representative Team Lead and Plaintiff Michelle Boyd served as a Triage Nurse. *Id.* ¶¶ 28, 53. Defendant Shannon McEntire was Fountain Lake's Clinic Director and was supervisor to both Plaintiffs. Defendant Rebecca Halley served as Fountain Lake's Senior Human Resources Manager. *Id.* ¶¶ 7, 9, 29, 54.

In their pleading, Plaintiffs bring the following claims: (1) an Age Discrimination in Employment Act ("ADEA") claim against Defendants McEntire and Halley in their official capacities; (2) a 42 U.S.C. § 1983 First Amendment retaliation claim against Defendants McEntire and Halley in their individual capacities; (3) a 42 U.S.C. § 1983 Fourteenth Amendment claim against Defendants McEntire and Halley in their individual capacities; (4) an Oklahoma Anti-Discrimination Act ("OADA") claim against Defendant University; and (5) a *Burk*[1] tort claim against Defendant University. Additionally, Plaintiff Boyd brings two claims individually: (6) an Americans with Disabilities Act ("ADA") claim against Defendants McEntire and Halley in their official capacities; and (7) a Rehabilitation Act claim against Defendants University, McEntire, and Halley.

STANDARD OF DECISION

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted

---

[1] *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).

when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

DISCUSSION

The Court first considers the two claims brought by Plaintiff Boyd individually and then turns to the claims brought by the Plaintiffs jointly.

I.     *Plaintiff Boyd's ADA Claim*

Plaintiff Boyd alleges that on September 19, 2017, she "suffered a needle stick with a dirty needle." Second Am. Pet. ¶ 55. To ensure that she had not been exposed to pathogens, Boyd was required to have her blood drawn and tested on five occasions, including "one day, one month, two months, six months, and one year after the initial needle stick." *Id.* ¶¶ 59-60. Boyd alleges that her requests for time off for these tests were denied on three separate occasions during the last four months of her employment and that she was "retaliated against for requesting reasonable time off" for the blood tests. *Id.* ¶¶ 61-63; *see also id.* ¶¶ 105-117. Boyd brings her ADA claim against Defendants McEntire and Halley in their official capacities.

The ADA prohibits employers from discriminating "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Act specifically addresses when an employer may require that an employee undergo medical examination and when such requirement would constitute discrimination. *Id.* § 12112(d). For current employees, like Boyd was during the relevant time period, a covered employer is permitted to require a medical examination from an employee only when the examination "is shown to be job-related and consistent with business necessity." *Id*. § 12112(d)(4)(A); 29 C.F.R. § 1630.14.

Boyd does not contend that § 12112(d) did not authorize Fountain Lake to require that Boyd submit herself to a one-year testing protocol following her needle-stick injury. Such a requirement is plainly permitted under the statute. Ascertaining whether a nurse who suffers a blood-to-blood exposure with a patient, and therefore is at an elevated risk of contracting a communicable disease and through her work exposing others to that disease, is both job-related and consistent with business necessity.

Instead, Boyd asserts that her possible exposure to disease rendered her disabled within the meaning of the ADA, or that Fountain Lake regarded her as disabled, and that— among other discriminatory acts—Fountain Lake failed to reasonably accommodate this disability by giving her time off for the tests. Defendants argue in their Motions that Plaintiff Boyd fails to state a claim upon which relief can be granted because neither the potential exposure to pathogens nor the need for periodic blood testing constitutes a disability under the ADA. *See* Def. McEntire's Mot. (Doc. No. 6) at 15-16; Def. Halley's

4

Mot. (Doc. No. 7) at 13-15; Fed. R. Civ. P. 12(b)(6).

To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the employer discriminated against her because of her disability." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000); *see DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017). The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Boyd alleges that her disability falls within subsection (C) of § 12102(1). *See* Pls.' Resp. to Def. McEntire's Mot. (Doc. No. 16) at 17. For purposes of this subsection, a plaintiff "meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Subsection 12102(1)(C), however, does not apply to "impairments that are transitory and minor." *Id.* § 12102(3)(B).

Thus, to show that Defendants regarded Boyd as having an impairment for purposes of § 12102(1)(C), Boyd "must show that (1) [s]he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action." *Adair*

5

*v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016).  Boyd argues that "needing blood testing periodically for a year was an actual or perceived impairment" and that the "blood testing was neither transitory [n]or minor."  Pls.' Resp. to Def. McEntire's Mot. at 18.  Boyd's argument fails for several reasons.

First, Boyd has not plausibly alleged an actual impairment.  Plaintiffs' allegations reflect that Boyd was required to undergo testing due to the *possibility* that she was infected as a result of a needle-stick injury, not because of any known infection.  And although it is alleged that the needle-stick injury "temporarily affected [Boyd's] immune system," Second Am. Pet. ¶ 57, Boyd provides no factual or scientific support for such a contention.  Neither does she provide any authority supporting her contention that such a temporary effect, or the need for medical testing in general, constitutes an actual physical or mental impairment.  *See* 42 U.S.C. § 12102(1)(A) (an impairment under the ADA must be a physical or mental impairment); *see also Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 996-97 (10th Cir. 2019) ("The ADA does not define 'physical or mental impairment,' but an EEOC regulation specifies that the terms encompass '[a]ny physiological disorder, or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, [or] digestive . . . .' 29 C.F.R. § 1630.2(h)(1)." (alterations and omissions in original)).  The Court determines that Boyd's allegations do not plausibly reflect an actual impairment within the meaning of the ADA.

Second, Boyd alleges no facts from which a plausible inference could be drawn that Defendants perceived Boyd's condition or need for blood testing as a physical or mental

impairment. Again, Boyd has alleged no facts indicating that Defendants believed her to be infected with any disease—only that she was required to undergo testing due to the possibility of infection.

Finally, even assuming the need for blood testing constitutes an impairment, Boyd's testing was "transitory and minor" as contemplated under the statute. *See* 42 U.S.C. § 12102(3)(B). The ADA defines a transitory impairment as one "with an actual or expected duration of 6 months or less." *Id.* While Boyd alleges that the five occasions on which she had her blood drawn spanned a period of one year, the durational requirement of § 12102(1)(C) is not met when the alleged impairment impacts only five days of that year.

For these reasons, the Court determines that Plaintiff Boyd has failed to plausibly allege an ADA claim.

## II.     *Plaintiff Boyd's Rehabilitation Act Claim*

Next, Plaintiff Boyd alleges that Defendant University and Defendants McEntire and Halley in their official capacities violated Section 504 of the Rehabilitation Act, under which "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of [Title 29], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *see* Second Am. Pet. ¶¶ 177-192; Pls.' Resp. to Def. McEntire's Mot. at 26-27. Section 705(20), in turn, prescribes that for purposes of § 794, an individual with a disability is "any person who has a disability as defined in section 12102 of [the ADA]." *Id.* § 705(20)(B).

The Court has already determined that Plaintiff Boyd has failed to plausibly plead an actual disability as defined under the ADA. *See supra* Section I. Accordingly, Boyd's Rehabilitation Act claim must likewise fail. *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 758 (10th Cir. 2020) ("Whether § 504(a) has been violated by employment discrimination is to be determined using the standards applied under title I of the [ADA]." (internal quotation marks omitted)).

III. *Plaintiffs' ADEA Claim*

Both Plaintiff Betchan and Plaintiff Boyd claim that Defendant McEntire treated them less favorably than younger employees and that they were terminated from their employment due to their age. *See* Second Am. Pet. ¶¶ 81-104. Plaintiffs bring their ADEA claim against Defendants McEntire and Halley in their official capacities.

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Generally, to establish a prima facie case of age discrimination, a plaintiff must prove that "1) she is a member of the class protected by the ADEA; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (2010) (alteration and internal quotation marks omitted). The adverse-employment-action prong is satisfied not by "a mere inconvenience or an alteration of job responsibilities," but by a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (internal quotation marks omitted).

Aside from their termination, Plaintiffs' general allegations of harassment fail to rise to the level of an adverse employment action. Plaintiffs allege that Defendant McEntire "treated them . . . less favorably than employees who were younger" and that McEntire unfairly chastised Betchan for unsatisfactory work. Second Am. Pet. ¶¶ 87-97. But these allegations show only a "mere inconvenience," not a "significant change in employment status." *Jones*, 617 F.3d at 1279 (internal quotation marks omitted). Plaintiffs do broadly allege that they "were not promoted or given raises, were overlooked for promotions for which they were otherwise qualified, [and] have lost wages and benefits." Second Am. Pet. ¶ 101. But Plaintiffs provide no additional facts regarding these alleged actions, and the pleading therefore does not adequately "permit[] the defendant[s] sufficient notice to begin preparing [their] defense." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

Thus, Plaintiffs' ADEA claim rests solely on their alleged termination. In their pleading, however, Plaintiffs only nominally reference their termination in relation to their ADEA claim. *See* Second Am. Pet. ¶ 103 ("Plaintiffs . . . were subjected to adverse employment actions by the Defendants including hostile work environment and termination of their position[s] due to discrimination against them based on their age.").

9

This sole, conclusory allegation fails to plausibly suggest that Plaintiffs' "age was a 'but-for' cause, or 'the factor that made a difference'" as to their termination. *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947 (10th Cir. 2011) (citations omitted).

Moreover, when the alleged adverse employment action is the plaintiff's termination, a variance of the prima facie case applies: the plaintiff must demonstrate that he or she was "(1) within the protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a younger person, although not necessarily one less than 40 years of age." *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008); *see Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir. 2010); *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004). Here, Plaintiffs fail to allege that they were replaced by younger individuals.

Plaintiffs argue that, though their pleading does not make this affirmative allegation, it is plausible that they were replaced by younger individuals because of McEntire's alleged age bias. *See* Pls.' Resp. to Def. McEntire's Mot. at 14 (admitting that "the exact age of a replacement is unknown," but arguing that McEntire's "treatment of other employees around Plaintiffs' ages" makes it "plausible that, at the very least, McEntire interviewed and/or offered Plaintiffs' former positions to those younger than Plaintiffs"). Yet, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. In the absence of allegations supporting this material element, Plaintiffs' pleading fails to provide "specific factual allegations . . . plausibly suggest[ing] the defendant[s] [are] liable." *Kan. Penn Gaming,*

10

*LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) ("[A] plaintiff must offer specific factual allegations to support each claim."); *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("[T]he elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

Accordingly, Defendants' request for dismissal of Plaintiffs' ADEA claim must be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

IV.     *Plaintiffs' 42 U.S.C. § 1983 First Amendment Retaliation Claim*

Plaintiffs next allege that Defendants McEntire and Halley violated their First Amendment rights by "[taking] adverse employment action" against them for filing internal grievances against McEntire. Second Am. Pet. ¶¶ 144-153. Plaintiffs bring this claim against Defendants McEntire and Halley in their individual capacities.

To successfully plead a freedom-of-speech retaliation claim, Plaintiffs must plausibly allege, among other elements, that the speech at issue is a matter of public concern. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205-06 (10th Cir. 2007). In determining whether speech qualifies as a matter of public concern, Courts "may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Id.* at 1205 (internal quotation marks omitted).

Plaintiffs' pleading contains only sparse allegations regarding their internal grievances. Plaintiffs allege that in early October 2017, Betchan filed a grievance against McEntire in which Boyd was listed as a witness. *See* Second Am. Pet. ¶¶ 41-42, 66. Plaintiffs claim that McEntire subsequently "began a course of retaliation against

11

Betchan," which consisted of giving Betchan an allegedly unwarranted written warning for "lack of attention to detail." *Id.* ¶¶ 43-46. Though the pleading fails to set out the contents of Betchan's grievance, the grievance appears to be related to McEntire's alleged "singl[ing] out" and "chastis[ing]" of Betchan, McEntire's "lack of communication," and "the policy changes McEntire was implementing in the clinic." *Id.* ¶¶ 38-43, 93-95. With regard to Boyd, the only grievance referenced in the pleading is related to McEntire's alleged denial of Boyd's requests for time off for blood testing. *See id.* ¶¶ 61-63, 111. Boyd filed the grievance against McEntire in early October 2017. *See id.* ¶¶ 64-66.

The Tenth Circuit has expressly held that "comments reflect[ing] [p]laintiffs' dissatisfaction with their supervisors' performance . . . are not matters of public concern." *Brammer-Hoelter*, 492 F.3d at 1206; *see also id.* at 1205 ("[S]peech that simply airs grievances of a purely personal nature typically does not involve matters of public concern." (internal quotation marks omitted)); *id.* ("[W]e have held that the following are not matters of public concern: speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration." (citations omitted)); *Bunger v. Univ. of Okla. Bd. of Regents*, 95 F.3d 987, 992 (10th Cir. 1996) (explaining that grievances that are "internal in scope and personal in nature" are not matters of public concern).

Plaintiffs argue that dismissal on this point is premature, as Plaintiffs have not had an opportunity to develop the record. *See* Pls.' Resp. to Def. McEntire's Mot. at 26. But Plaintiffs should know the nature and content of their own grievances at the pleading stage of litigation. And the only reasonable inference to be drawn from the few relevant factual

allegations is that the grievances were purely internal complaints regarding workplace behavior rather than "attempt[s] to expose some malfeasance that would directly affect the community at large." *Colburn v. Trs. of Ind. Univ.*, 973 F.2d 581, 586 (7th Cir. 1992); *see also Kan. Penn Gaming*, 656 F.3d at 1215 (noting that "[t]he *Twombly* standard may have greater bite in the context of a § 1983 claim against individual government actors" (internal quotation marks omitted)).

Accordingly, the Court determines that Plaintiffs' First Amendment retaliation claim should be dismissed.

V.   *Plaintiffs' 42 U.S.C. § 1983 Fourteenth Amendment Claim*

Plaintiffs predicate their Fourteenth Amendment claim on allegations that Defendants McEntire and Halley accessed Betchan's medical records without her permission. Plaintiffs bring this claim against Defendants McEntire and Halley in their individual capacities.

Relevant to this claim, Plaintiffs allege that on or around December 15, 2017, Betchan, who had previously been a patient at Fountain Lake, approached a Fountain Lake physician "in the hallway of the clinic to ask if he could write a note for Betchan's other employer regarding a particular medical issue." Second Am. Pet. ¶¶ 68-69. The physician directed Betchan to have a nurse "check Betchan's medical records" to determine if they contained the diagnosis code for the specific medical issue. *Id.* ¶ 70. As directed, Betchan asked Boyd to access her medical records, and Boyd complied. *Id.* ¶¶ 71-72. Defendant Halley was notified on or around January 24, 2018, that Betchan's medical records had been accessed. After conducting an investigation, Halley "believed that Betchan had

13

instructed Boyd to add a diagnosis code to Betchan's medical record" and "believed Betchan's and Boyd's actions violated Fountain Lake's [Health Information Portability and Accountability Act ("HIPAA")] policy and the minimum necessary rule." *Id.* ¶¶ 75-79.

Plaintiffs further allege that Defendant McEntire "conducted an audit of Betchan's medical records" during this time to determine whether Plaintiffs had violated Fountain Lake's policies. *Id.* ¶ 131. They assert that McEntire was accessing the health records "in relation to [her] role as the Clinic Director" rather than her role as a health care provider. *Id.* ¶¶ 131-135 (alleging that "Betchan only executed a release [of medical information] for purposes of treatment[,] not employment," and "[a]n employer does not have a right to access a party's medical records absent a properly authorized waiver"). Plaintiffs were terminated on January 25, 2018, "for allegedly violating Fountain Lake's policies." *Id.* ¶ 80.

Plaintiffs now claim that McEntire and Halley's access of Betchan's medical information violated HIPAA, as well as Betchan's right to privacy under the Fourteenth Amendment. The parties agree that "HIPAA does not create a private right of action for alleged disclosures of confidential medical information." *Wilkerson*, 606 F.3d at 1267 n.4. Plaintiffs argue, however, that the facts underlying Defendants' alleged HIPAA violation support a § 1983 claim for violation of privacy under the Fourteenth Amendment. Defendants, in turn, argue that they are entitled to qualified immunity on the claim, as conduct commensurate with a HIPAA violation does not violate clearly established constitutional rights.

Under the doctrine of qualified immunity, "government officials performing

14

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted); *see Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009) (holding that courts can undertake the two-part test of a qualified-immunity defense in either order).

As an initial matter, the allegations fail to demonstrate that *Plaintiff Boyd* suffered a privacy violation of any kind. As the sole predicate of the Plaintiffs' Fourteenth Amendment claim is the alleged access of *Plaintiff Betchan's* medical information, Boyd has not plausibly alleged that she personally experienced an unconstitutional violation of her privacy rights. Accordingly, Boyd's claim is subject to dismissal under the first prong of the qualified-immunity analysis. *See Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990) ("[A] section 1983 claim must be based upon the violation of the plaintiff's personal rights, and not the rights of someone else.").

As to Betchan's claim, the Court need not determine whether the first prong of the analysis is satisfied, as Plaintiffs have failed to meet their burden of identifying clearly established law that would have put Defendants on notice that their conduct was unlawful. *See Cummings v. Dean*, 913 F.3d 1227, 1238, 1239 (10th Cir. 2019). To demonstrate that a right is clearly established, a plaintiff must either "identif[y] an on-point Supreme Court

15

or published Tenth Circuit decision that establishes the unlawfulness of the defendant's conduct" or, alternatively, demonstrate that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Id.* at 1239 (internal quotation marks omitted). Here, Plaintiffs rely on two cases: *Whalen v. Roe*, 429 U.S. 589 (1977), and *Eagle v. Morgan*, 88 F.3d 620 (8th Cir. 1996). *See* Pls.' Resp. to Def. McEntire's Mot. at 21-22. Only *Whalen* warrants discussion.[2]

In *Whalen*, the Supreme Court recognized "a right to privacy in the non-disclosure of personal information." *Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000) (citing *Whalen*). While broadly relevant, this authority fails to "demonstrate . . . that [Defendants'] actions in a 'more particularized sense' constitute a violation of a constitutional right." *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

"Although it is not necessary for the facts in the cited authority to correspond exactly to the situation the plaintiff complains of, the plaintiff must demonstrate a substantial correspondence between the conduct in question and the prior law allegedly established that the defendant's actions were clearly prohibited." *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (internal quotation marks omitted). An unpublished decision of the Tenth Circuit illustrates the lack of substantial correspondence between *Whalen*'s

---

[2] In *Eagle v. Morgan*, the Eighth Circuit determined that the public disclosure of the plaintiff's prior criminal history did not constitute a constitutional violation of privacy. *See Eagle*, 88 F.3d at 624-27. Not only is this case not controlling authority within the Tenth Circuit, but the factual allegations fail to correspond to the alleged facts underlying Plaintiffs' claim.

16

holding that disclosure of personal information may violate the right to privacy and Plaintiff Betchan's assertion that her right to privacy was violated by conduct constituting a HIPAA violation, namely the disclosure of confidential medical information. In *Thompson v. Larned State Hosp.*, 597 F. App'x 548, 550 n.1 (10th Cir. 2015), the Tenth Circuit noted that it has "not squarely addressed alleged HIPAA violations in the context of a § 1983 action" but that "at least two of [its] sister circuits have and have ruled that HIPAA violations cannot be remedied through a § 1983 action." *Id.* (citing *Dodd v. Jones*, 623 F.3d 563 (8th Cir. 2010), and *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010)). Were there clearly established authority that a HIPAA violation could constitute a Fourteenth Amendment violation, it would have been evident to the Tenth Circuit in *Thompson*. *See also* Pls.' Resp. to Def. McEntire's Mot. at 22 (stating that "the Tenth Circuit has not ruled on the issue of what violates an individual's Fourteenth Amendment right to privacy"). Accordingly, *Whalen* does not demonstrate that Defendants violated a clearly established constitutional right by accessing Betchan's medical records.

For these reasons, the Court determines that Defendants McEntire and Halley are entitled to qualified immunity on Plaintiffs' Fourteenth Amendment claim.

VI. *Plaintiffs' State-Law Claims*

Plaintiffs also assert two state-law claims against Defendant University, one pursuant to *Burk v. K-Mart Corporation*, 770 P.2d 24 (Okla. 1989), and the other pursuant to the OADA, Okla. Stat. tit. 25, §§ 1101 et seq. Because Defendants are entitled to dismissal on each of Plaintiffs' federal claims, and Plaintiffs have not alleged or established diversity of citizenship within the meaning of 28 U.S.C. § 1332, the Court declines to exercise

supplemental jurisdiction over Plaintiffs' state-law claims. *See* 28 U.S.C. §§ 1331, 1332, 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## CONCLUSION

The federal pleading standard "serves two purposes: 'to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense,' and 'to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.'" *Kan. Penn Gaming*, 656 F.3d at 1215 (internal quotation marks omitted) (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring)).

In view of these objectives, and for the reasons stated herein, the Court GRANTS Defendants' Motions to Dismiss (Doc. Nos. 5, 6, 7). Plaintiffs' ADA, Rehabilitation Act, ADEA, First Amendment, and Fourteenth Amendment claims are DISMISSED without prejudice. The Court DECLINES to exercise supplemental jurisdiction over Plaintiffs' state-law claims. A separate judgment shall be entered.

IT IS SO ORDERED this 30th day of November, 2020.

CHARLES B. GOODWIN
United States District Judge